J-S57028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID ELIJAH WARD | : | |
| | : | |
| Appellant | : | No. 109 EDA 2018 |

Appeal from the Judgment of Sentence September 21, 2017
in the Court of Common Pleas of Bucks County
Criminal Division at No.:  CP-09-CR-0007977-2016

BEFORE:   PANELLA, J., PLATT*, J., and STRASSBURGER*, J.

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 28, 2018**

Appellant, David Elijah Ward, appeals from the judgment of sentence imposed following his jury conviction of two counts of indecent assault.[1]  We affirm.

The trial court aptly provided the factual and procedural background in its February 2, 2018 opinion:

> . . . On July 21, 2016, at approximately 8:55 P.M., H.R. visited Hand and Stone Spa in Fairless Hills, PA ("Hand and Stone") for a massage appointment.  H.R. had previously received one massage, not from Appellant, at this Hand and Spa location, as well as one other massage in her life.  After H.R. arrived, Appellant introduced himself and led H.R. to the massage room, which contained a massage table with sheets.  Appellant directed H.R. to undress to her underwear and lie face down on the table[,]

---

[1] 18 Pa.C.S.A. § 3126(a)(1).   The jury found Appellant not-guilty of aggravated indecent assault.  **See** 18 Pa.C.S.A. § 3125.

---

*   Retired Senior Judge assigned to the Superior Court.

under the blanket. H.R. undressed but left the bottom portion of her underwear on during the massage.

During the massage, Appellant first began working on H.R.'s upper back towards her shoulders. While H.R. was still lying face down on the massage table, Appellant began working toward H.R.'s lower back in a way that H.R. felt was "a little bit too low on top of my butt" compared to previous massages she had experienced. (N.T. Trial, 4/19/17, at 109). H.R. did not respond verbally or physically to this action, but testified that she "wanted to give [Appellant] the benefit of the doubt". (*Id.*). After finishing with H.R.'s back, Appellant instructed H.R. to switch from lying on her stomach to lying on her back.

Appellant eventually began working on the lower portion of H.R.'s body. While applying pressure to H.R.'s left leg, Appellant slid his hand under H.R.'s left buttocks and made a grabbing motion as he placed his right hand on her left thigh. H.R. again did not respond verbally or physically, but testified to her discomfort at that moment. Appellant subsequently moved to H.R.'s right leg, and after working up to H.R.'s right thigh[,] placed one hand underneath her buttocks. As he did, Appellant began to rub the exterior of H.R.'s vagina in a circular motion with his right hand. Appellant performed this action briefly on top of H.R.'s underwear before inserting his hand underneath her underwear. Eventually Appellant penetrated H.R.'s vagina with his fingers. During this period[,] Appellant moved his left hand from her buttocks and began touching her breasts above the sheets, pinching the nipples. H.R. estimated that this experience lasted approximately five minutes.

During this experience, H.R. did not respond or resist [] Appellant's actions. H.R. testified that she felt shocked, confused, and scared, and did not know what Appellant would do if she attempted to stop him. H.R. further stated that she did not believe she could overpower Appellant. H.R. confirmed that she did not desire or expect Appellant's actions and had never encountered similar actions at any other massage. H.R. also testified she felt "slightly violated" after the massage. (*Id.* at 121).

After finishing the massage, Appellant left the room. . . . [She] then paid and left Hand and Stone and proceeded to call her boyfriend, [R.L.], informing him of her experience. H.R. returned to her residence, showered, and . . . [R.L.] drove himself and H.R.

J-S57028-18

to the Falls Township Police Department.  At th[e] police station . . . Detective Stephen Reeves spoke with H.R. [].

* * *

[Complainant] E.M. first received a massage from Appellant on July 14, 2016[, which] seemed "fairly normal" compared with the approximately [ten] previous massages she had received[.] . . . E.M. then made an appointment for July 28, 2016, to receive a [second] massage from Appellant.

. . . [O]n July 28, 2016, [when] E.M. arrived at Hand and Stone, . . . Appellant instructed E.M. to disrobe to her comfort level[.] . . . E.M. accordingly removed all of her clothing. . . . While massaging E.M.'s right leg, Appellant moved his hands higher on the thigh than E.M. had experienced in her past massages. Appellant then began rubbing the outside of E.M.'s genitals in a circular motion. E.M. testified that this contact was "[a]bsolutely not" a mere brush or passing moment.  (N.T. Trial, 4/20/17, at 81).  E.M. shifted her hips to indicate her discomfort, at which point Appellant asked if she were uncomfortable and E.M. affirmed.  Appellant apologized and then moved the hand which had come in contact with her genitals to the middle of her thigh before finishing the massage.

E.M. testified that she felt "[s]cared to death" during Appellant's actions.  (*Id.* at 82). . . . Following the massage, . . . E.M. paid and left Hand and Stone[.]

(Trial Court Opinion, at 1-3) (most record citations omitted; record citation formatting provided).

On April 21, 2017, at the conclusion of a three-day trial, the jury convicted Appellant of two counts of indecent assault.  On August 14, 2017, the court sentenced Appellant to an aggregate term of not less than four nor more than twenty-three months' incarceration, with credit for time-served. Appellant timely filed a post-sentence motion.  On September 21, 2017, the court granted that portion of the motion seeking additional credit for time-

- 3 -

served, and, on November 29, 2017, it denied the remainder of his post-sentence motion after a hearing. Appellant timely appealed.[2]

Appellant raises five questions for this Court's review:

I. Whether the trial court erred in overruling defense counsel's **Batson**[3] challenge when the Assistant District Attorney struck Juror Number 23[?]

II. Whether the trial court erred in denying defense counsel's motion for a mistrial[?]

III. Whether the evidence was insufficient to sustain the verdict of guilt for both counts of indecent assault where the Commonwealth failed to prove beyond a reasonable doubt Appellant possessed the requisite *mens rea*[?]

IV. Whether the verdict was against the weight of the evidence[?]

V. Whether the sentencing court erred in sentencing Appellant to an aggravated range, aggregate sentence and failed to put specific reasons for doing so on the record[?]

(Appellant's Brief, at 5-6).

In his first claim, Appellant maintains that "[t]he Assistant District Attorney violated **Batson** . . . when she struck Juror Number 23 and the trial court erred when it overruled defense counsel's challenge." (**Id.** at 9). We disagree.

A **Batson** claim presents mixed questions of law and fact. Therefore, our standard of review is whether the trial court's legal

---

[2] Pursuant to the trial court's order, Appellant filed a concise statement of errors complained of on January 22, 2018. The court filed an opinion on February 2, 2018. **See** Pa.R.A.P. 1925.

[3] **Batson v. Kentucky**, 476 U.S. 79 (1986).

conclusions are correct and whether its factual findings are clearly erroneous.

In **Batson**, the [Supreme Court of the United States] held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution. When a defendant makes a **Batson** challenge during jury selection:

First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

**Commonwealth v. Edwards**, 177 A.3d 963, 971 (Pa. Super. 2018) (citations and quotation marks omitted). "The trial court should consider the totality of circumstances when determining whether the prosecutor acted with discriminatory intent or engaged in purposeful discrimination." **Commonwealth v. Towles**, 106 A.3d 591, 602 (Pa. 2014), *cert. denied*, 135 S. Ct. 1494 (2015) (citation omitted). This Court must give great deference to the trial court's finding about the absence of discriminatory intent in peremptory challenges, and we will not overturn it unless it is clearly erroneous. **See id.**

Here, the trial court explained:

In this case, Appellant's trial counsel raised objections based on the fact that "Number 23, out of the 56 panel member[s], is the only African American juror, potential juror" and that "Juror Number 23 did not answer any question in such a way the

- 5 -

defense, the Commonwealth, nor the Court had to have any follow-up question". (N.T. Trial, 4/19/17, at 51-52). In response, the Commonwealth noted that it struck "all single males on the jury", and that "that was the reason he was struck. My first strike was single men." (*Id.* at 52). The Commonwealth further stated that Jurors Number 7 and Number 3 were single men and also struck. (*See id.*) Based on this reasoning, the [c]ourt found, and continues to find, that the Commonwealth adequately offered a race-neutral explanation for striking Juror Number 23. Th[e] [c]ourt does not see any discriminatory intent in the Commonwealth's desire to strike all single males from a potential jury for a case where [Appellant] was an unmarried male. Accordingly, th[e] [c]ourt maintains that Appellant has insufficiently established a claim under *Batson*.

(Trial Ct. Op., at 6) (record citation formatting provided).

In the totality of the circumstances, we discern no legal or factual error where the Commonwealth provided a race-neutral explanation and the trial court found that Appellant failed to carry his burden of proving his *Batson* claim. *See Towles*, *supra* at 602; *Edwards*, *supra* at 971. Appellant's first issue does not merit relief.

In his second claim, Appellant argues that "[t]he trial court erred in denying defense counsel's motion for a mistrial." (Appellant's Brief, at 12) (record citation omitted). He alleges that his testimony, elicited by the Commonwealth during cross-examination, that Hand and Stone fired him after E.M. lodged her complaint, "had the unavoidable effect of depriving [him] of a fair trial." (*Id.* at 13) (citation omitted). Appellant's claim lacks merit.

Our standard of review of the denial of a motion for a mistrial is well-settled.

- 6 -

The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

*Commonwealth v. Johnson*, 107 A.3d 52, 77 (Pa. 2014), *cert. denied*, 136

S. Ct. 43 (2015) (citation omitted).

Here, the trial court explains:

In this case, the Commonwealth on cross-examination of Appellant asked, "And in response to that complaint by [E.M.,] Hand and Stone fired you?" (N.T. Trial, 4/20/17, at 119). Appellant's trial counsel immediately objected, which objection was sustained by the[e] [c]ourt. (*See id.*). Following this objection, a sidebar was held with Appellant's counsel, the Commonwealth, and the [c]ourt, in which Appellant's counsel moved for a mistrial because "there's before this jury what could be conceived as a conclusion of an investigation or a finding of fact that he did in fact do this, resulting in his termination". (*Id.* at 119-20). Appellant's counsel then asked the [c]ourt for a mistrial or, alternatively, a "cautionary instruction that employment termination is of no moment as to whether something did or did not occur". (*Id.* at 120). The [c]ourt denied the mistrial, but agreed to instruct the jury "that they strike that from their consideration". [(*Id.*)]. Appellant's trial counsel then stated that he did not want a cautionary instruction after all. (*See id.*). When the [c]ourt determined that the Commonwealth sought to show through its questioning that Appellant wrote a statement of appeal following his firing, the [c]ourt agreed to allow that statement, and the Commonwealth promised to make no mention of the firing other than Appellant's written statement. (*See id.* at 120-21).

. . . The only other reference to Appellant's employment at trial occurred during direct examination of Appellant, in which Appellant's counsel asked if Appellant were employed and

- 7 -

affirmed that Appellant was working at that time as a personal trainer. (*See id.* at 103). . . .

(Trial Ct. Op., at 78) (record citation formatting provided).

Based on the foregoing, and our independent review of the certified record, which confirms the trial court's recitation of the facts, we conclude that it did not abuse its discretion in denying Appellant's motion for a new trial. *See Johnson*, *supra* at 77. The court sustained Appellant's objection immediately after defense counsel made it, and the Commonwealth did not mention his termination again. Other than his bald presumption that, "[o]nce the jury heard that Appellant had been fired, no reasonable juror could possibly conclude that an assault did not occur[,]" Appellant fails to establish that the jury was unable to fairly weigh the evidence because of this fleeting mention of his firing. (Appellant's Brief, at 13 (emphasis omitted); *see id.* at 12). Appellant's second issue does not merit relief.

Appellant's third issue challenges the sufficiency of the evidence to sustain his conviction of indecent assault where the Commonwealth failed to establish that he possessed the required *mens rea*. (*See id.* at 13-15). Appellant's issue lacks merit.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt

may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Thomas*, ___ A.3d ___, 2018 WL 3679940, at *5 (Pa. Super. filed Aug. 3, 2018) (citation omitted). It is well-settled that, "[i]n a prosecution for sex offenses, a verdict may rest on the uncorroborated testimony of the victim. *Commonwealth v. Cody*, 584 A.2d 992, 993 (Pa. Super. 1991), *appeal denied*, 592 A.2d 42 (Pa. 1991) (citing 18 Pa.C.S.A. § 3106) (case citation omitted). Further, "[t]he Commonwealth is not required to prove *mens rea* by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence." *Commonwealth v. Beasley*, 138 A.3d 39, 48 (Pa. Super. 2016), *appeal denied*, 161 A.3d 791 (Pa. 2016) (citation omitted).

Section 3126 of the Crimes Code provides, in pertinent part: "A person is guilty of indecent assault if the person has indecent contact with the complainant . . . for the purpose of arousing sexual desire in the person or the complainant and . . . the person does so without the complainant's consent[.]" 18 Pa.C.S.A. § 3126(a)(1).

Instantly, both complainants testified that, based on their experience with other massages, Appellant touched them inappropriately. (*See* N.T.

Trial, 4/19/17, at 109, 112-18; N.T. Trial, at 4/20/17, at 80-81). Specifically, he rubbed the exterior of their vaginas in a circular motion, penetrating H.R. with his fingers while pinching her nipples, and grabbing her buttocks. (**See** N.T. Trial, 4/19/17, at 112-18; N.T. Trial, 4/20/17, at 80-81). Both women testified to their discomfort and stated that they did not want Appellant to touch them this way. (**See** N.T. Trial, 4/19/17, at 119-21; N.T. Trial, 4/20/17, at 81-82).

Based on the foregoing, we conclude that the evidence sufficiently established that Appellant had indecent contact with the complainants without their consent for the purpose of arousing sexual desire. **See Thomas**, **supra** at *5; **Beasley**, **supra** at 48; **Cody**, **supra** at 993. Appellant's third issue lacks merit.[4]

In Appellant's fourth issue, he claims that the verdict was against the weight of the evidence. (**See** Appellant's Brief, at 16-17). He maintains that the verdict shocks the conscience because the evidence, specifically his own testimony and that of his character witnesses, established that any touching

_____

[4] We note that, although he frames his issue as a challenge to the sufficiency of the evidence to support a finding of his required *mens rea*, (**see** Appellant's Brief, at 5, 13), his argument sounds more akin to a weight of the evidence challenge. He compares his testimony to that of the complainants' and concludes that the differences rendered the evidence insufficient. (**See id.** at 15). He also points to the fact that E.M. did not contact the police and that no DNA evidence was recovered from H.R.'s underwear as proof that the evidence was insufficient. (**See id.**). However, these arguments go to the weight of the evidence, not its sufficiency, which was within the province of the jury to decide. **See Cramer**, **infra** at *2.

was accidental, not intentional. (*See id.*). Appellant's fourth claim lacks merit.

> When considering challenges to the weight of the evidence, we apply the following precepts. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the factfinder. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

> Moreover, when a trial court finds that the evidence was not against the weight of the evidence, we must give the gravest consideration to the trial court's conclusion because it is the trial court, and not the appellate court, that had the opportunity to hear and see the evidence presented. Furthermore, a defendant will only prevail on a challenge to the weight of the evidence when the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Cramer*, ___ A.3d ___ 2018 WL 4232479, at **2-3 (Pa. Super. filed Sept. 6, 2018) (citations and quotation marks omitted).

In the case *sub judice*, the trial court found that:

> . . . The jury was presented with evidence by both the Commonwealth and Appellant, considered the credibility of the witnesses presented by each side, and ultimately believed the evidence presented by the Commonwealth. . . . [T]he evidence presented was more than sufficient to support Appellant's convictions, and th[e] [c]ourt discerns no reason why the convictions should shock any reasonable person's sense of justice. . . .

(Trial Ct. Op., at 10).

We agree with the trial court. It was within the province of the jury to determine the weight of the evidence, including resolving conflicts in the testimony and credibility questions. *See Cramer*, *supra* at *2. "[T]he

- 11 -

evidence [was not] so tenuous, vague and uncertain that the verdict shocks the conscience of the [C]ourt." *Id.* at *3. Therefore, Appellant's fourth issue lacks merit.

Finally, in his fifth issue, Appellant challenges the discretionary aspects of his sentence. (*See* Appellant's Brief, at 17-18). This issue is waived.

> Challenges to the discretionary aspects of sentence are not appealable as of right. Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[A.] § 9781(b).

*Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (case citation omitted).

In this case, Appellant complied with the first two requirements of filing a timely notice of appeal and a post-sentence motion raising his sentencing issue. (*See* Post Sentence Motion, 8/24/17, at unnumbered page 2). However, he has failed to include a Rule 2119(f) statement in his brief. "While this does not automatically waive his claim on appeal, we may not reach the merits of [the] claims where the Commonwealth has object[ed] to the omission of the statement." *Commonwealth v. Hudson*, 820 A.2d 720, 727 (Pa. Super. 2003), *appeal denied*, 844 A.2d 551 (Pa. 2004) (citation and internal quotation marks omitted). Because the Commonwealth objects to the

omission of Appellant's Rule 2119(f) statement, (**see** Commonwealth's Brief, at 27-28), we deem his issue waived. **See Hudson**, **supra** at 727 (finding sentencing claim waived for review where Commonwealth objected to omission of Rule 2119(f) statement).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/18